IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY D. BROWN, | ) | CASE NO. 5:08CV0599 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| STEWART HUDSON, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | DOCS. NO. 1, 22 |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before

the court is the petition of Jeffrey D. Brown ("Brown") for a writ of habeas corpus (Doc. No.

1) filed pursuant to 28 U.S.C. § 2254 on March 10, 2008.[1]  Brown is in the custody of the

Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence

in the case of *State of Ohio v. Brown*, Case No. 2005-10-3788 (Summit County 2005).  For

the reasons given below, the petition should be denied.

I

The September term of the Summit County grand jury indicted Brown on one each

of murder, aggravated murder, and aggravated robbery, all with firearm specifications, and

one count of having a weapon while under a disability.  The state appellate court reviewing

---

[1]  Brown has also moved to expand the record to include the audio tape of his
interrogation by police shortly after being removed from intensive care.  Doc. No. 22.  That
motion is now moot, as the court has ordered respondent to file a copy of that audio tape
to complete the record and respondent has complied.  *See* Doc. No. 30. Exhs. 1-A and 1-B.

Brown's conviction described the following facts as relevant to the case:

{¶ 2} In the early morning hours of October 1, 2005, Appellant, Michael Clark, and the victim, Curtis "Taco" Williams, were at Mr. Clark's apartment drinking and partying.  During the party, Appellant felt that Mr. Williams was not fairly sharing the alcohol, so he decided to rob Mr. Williams.

{¶ 3} Around 4:30 a.m., Mr. Williams and Appellant left the party.  Appellant followed behind Mr. Williams as Mr. Williams had promised to give him a ride home.  When they reached the bottom of the stairwell, Appellant jumped Mr. Williams in an attempt to rob him.  In response to Appellant's attack, Mr. Williams pulled a gun on Appellant and shot him in the mouth.  Appellant then attempted to grab the gun from Mr. Williams and was shot in the torso.  Both men continued struggling for the gun, resulting in Mr. Williams being shot in the right armpit.  Appellant was then able to get the gun away from Mr. Williams and shot him in the back.  Appellant then fled the scene and hid the gun in the bushes.

{¶ 4} A .22 caliber gun was found near Mr. Williams' body along with five casings.  Mr. Williams was taken to the hospital, where he expired.  The police found $5.32 in change in Mr. Williams' pants pocket.  Mr. Williams also had approximately $79.00 in bills; however,  there is no evidence as to where the paper money was found on Mr. Williams' person.

{¶ 5} The police saw Appellant running from the area where the gun fire was heard.  Appellant was holding a wad of money with blood on it in his left hand and there was blood on Appellant's face and shirt.  Appellant was taken to the hospital for medical treatment of his gun shot wounds.  On October 8, 2005, the police obtained a taped statement from Appellant while he was still in the hospital.

{¶ 6} On October 25, 2005, the Summit County Grand Jury indicted Appellant as follows: Count One, murder, in violation of R.C. 2903.02(B), with a firearm specification, as defined in R.C. 2941.145, an unspecified felony; Count Two, aggravated murder, in violation of R.C. 2903.01(B), with a firearm specification, as defined in R.C. 2941.145, an unspecified felony; Count Three, aggravated robbery, in violation of R.C. 2911.01(A)(1)/(A)(3), with a firearm specification, as defined in R.C. 2941.145, a first-degree felony; Count Four, having weapons while under disability, in violation of R.C. 2923.13(A)(2), a third-degree felony; and Count Five, carrying a concealed weapon, in violation of R.C. 2923.12(A)(1), a fourth-degree felony.

{¶ 7} Appellant pled not guilty to all of the charges and filed a motion to suppress the taped statement.  The trial court held an evidentiary hearing on the motion to suppress, at which time it listened to the taped statement.  The trial court found that Appellant had knowingly, voluntarily, and intelligently waived his *Miranda* rights and voluntarily gave the taped statement to the police.

2

{¶ 8} Appellant proceeded with a jury trial. The jury returned guilty verdicts on the counts of murder, aggravated robbery with a firearm specification, and having a weapon while under disability.  Appellant was found not guilty on the remaining counts and specifications.

{¶ 9} The trial court sentenced Appellant to 15 years to life in prison for Count One, murder; ten years in prison for Count Three, aggravated robbery; three years in prison for the firearm specification on Count Three; and two years in prison for Count Four, having a weapon while under disability.  The sentences on Counts One and Three are to be served concurrently, while the sentences on Count Four and the firearm specification are to be served consecutively of each other and Count One.  Additionally, the trial court ordered that on October 1 st of every year, the Appellant is to be placed in solitary confinement with a copy of the letter from the victim's brother.

*State v. Brown*, 2007 WL 752163, at *1-*2 (Ohio App. March 14, 2007).[2]

Brown filed a petition for a federal writ of habeas corpus on March 10, 2008. Brown's

petition asserts three grounds for relief:

> **GROUND ONE:**  The petitioner was convicted without sufficient evidence, and the conviction was against the manifest weight of the evidence.

> **GROUND TWO:**  The trial court denied the petitioner's due process-fair trial rights and his right to remain silent-right to counsel when the trial court ruled against the petitioner's motion to suppress involuntary statements that were not given

---

[2] Brown challenges the accuracy of the state appellate court's recitation of the facts in three respects.  First, Brown asserts that there was no evidence in the record that Brown robbed the victim or "jumped" the victim.  Brown errs.  Terry Starcher ("Starcher"), a jail inmate to whom Brown allegedly related the events surrounding the robbery, testified that Brown intended to rob Williams and that he jumped Williams from behind.  *See* Transcript of Proceedings ("Tr."), v. II, pp. 318, 321-22.  Second, Brown contends that there was no evidence that Brown was shot twice during a struggle and then shot Williams in the back after securing the gun.  Again, Starcher's account and the testimony of Dr. Dorothy Dean, a deputy medical examiner for the Summit County Medical Examiner's Office, fully support the factual account given by the state appellate court.  *See* Tr., v. III, pp. 373-87.  Third, Brown contends that there was no evidence that he was running from the area of the altercation, only evidence that he was walking across the street toward a nearby hospital. Brian Boss of the Akron Police Department testified, however,  that Brown was running from the scene of the shooting and that he was dodging in between buildings rather than walking across the street toward a hospital. Tr., v. II, pp. 179-81.  Brown's objections to the state appellate court's account, therefore, are not well taken.

3

knowingly and intelligently at a police interrogation at the hospital.

**GROUND THREE:**  Petitioner was denied his Fifth, Sixth and Fourteenth Amendment rights when he was involuntarily, without his knowledge, forced to relinquish his right to remain silent and/or request counsel, before interrogation-- when said interrogation was placed as evidence before a jury.

Respondent filed an Answer/Return of Writ on August 28, 2008.  (Docket #9).  On November 10, 2008, Brown filed a Traverse (Doc. #23).  Thus, the petition is ready for decision.

II

A.    *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).  Brown was convicted in the court of common pleas in Summit County, Ohio, and filed his writ of habeas corpus in the Northern District of Ohio.  This court has jurisdiction over Brown's petition.

Respondent argues, however, that the portion of Brown's first ground for relief asserting that the evidence against him was against the manifest weight of the evidence is non-cognizable in federal habeas proceedings.  This is, in effect, a challenge to the court's subject matter jurisdiction over Brown's first ground for relief.

The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to

4

constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A habeas court resolves all conflicting inferences in favor of the prosecution, and does not weigh the credibility of witnesses.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt.  *Fuller v. Brown*, 662 F.2d 420, 435 (6th Cir. 1981), *cert. denied*, 455 U.S. 1028 (1982).  Any conviction based upon evidence sufficient to convince any rational trier of fact of the essential elements of the crime without a reasonable doubt offends the due process clause and may serve as grounds for habeas relief.

A claim that a conviction is against the manifest weight of the evidence differs from a claim that a conviction was based on insufficient evidence:

> With respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law."  Black's Law Dictionary (6 Ed.1990) 1433.  See, also, Crim. R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction).  In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148.  In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.  *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.  *Robinson, supra,* 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the

inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"  (Emphasis added.)  Black's, *supra,* at 1594.

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*State of Ohio v. Thompkins*, 78 Ohio St. 3d 380, 387-88, 678 N.E.2d 541, 546-47 (1997).

*See also Tibbs v. Florida*, 457 U.S. 31, 37-38, 38 n.11 (1982); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

A federal court reviewing a petition for a writ of habeas corpus has no authority to re-weigh the credibility of witnesses at trial.  *Marshall v. Lonberger*, 459 U.S. 422 (1983). It is incapable, therefore, of determining whether a conviction was against the manifest weight of the evidence.  It may only determine whether a conviction was based on *sufficient* evidence.  Brown's claim that his conviction was against the manifest weight of the evidence, therefore, is not cognizable in federal habeas corpus.  For this reason the court should dismiss that portion of Brown's first ground for relief for lack of subject matter jurisdiction.

B.     *Evidentiary hearing*

6

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  Brown's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Brown v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Brown has no remaining state remedies for his claims.  Because Brown has no remaining state remedies, his claims have been exhausted.

7

D.    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Respondent argues that petitioner has procedurally defaulted that portion of his first ground for relief asserting that insufficient evidence supported his conviction and has defaulted his claim in his second and third grounds for relief that his statements to police while in the hospital were involuntary.

1.    *Procedural default and Brown's first ground for relief*

Brown argued in the state appellate court and in the Ohio Supreme Court that his conviction for aggravated robbery[3] was against the manifest weight of the evidence.  As has already been shown, this claim is not cognizable in federal habeas corpus proceedings. His brief cited the standard for a "manifest weight" analysis and cited Ohio state cases addressing manifest weight analysis.

The  state  appellate  court  accepted  Brown's  argument  as  asserting  that  his

---

[3]    Although Brown's heading asserted that his "convictions" were against the manifest weight of the evidence, Brown argued in the state appellate court and in the Ohio Supreme Court only that his conviction for aggravated robbery was against the manifest weight of the evidence.  Brown presented no arguments regarding any of his other convictions.

conviction for aggravated robbery was against the manifest weight of the evidence and did not analyze the claim as challenging the sufficiency of the evidence against him.[4]  The state appellate court found that Brown's conviction for aggravated robbery was not against the manifest weight of the evidence presented at trial.

With regard to Brown's convictions for murder and having a weapon while under a disability, Brown has unequivocally defaulted his claims that there was constitutionally insufficient evidence to support these convictions.  He failed to present any arguments whatsoever in the state courts regarding the sufficiency of evidence or the manifest weight of the evidence in relation to these convictions.

Brown has not defaulted, however, his claim that there was constitutionally insufficient evidence to support his conviction for aggravated robbery.  In a similar case, *Nash v. Eberlin*, 258 Fed.Appx. 761 (6th Cir. 2007), in which a habeas petitioner argued a conviction against the manifest weight of the evidence in the state courts then raised a claim of insufficiency of the evidence for the first time in his federal habeas petition, the Sixth Circuit reasoned as follows:

> As a threshold matter, we first determine that Nash did not procedurally default on his sufficiency of the evidence claim by not presenting it to the Ohio state courts. Under normal circumstances, habeas relief can only be sought for claims that have been ruled upon in state court.  *See* 28 U.S.C. § 2254(b)(1)(A).  On appeal to the Fifth Circuit Court of Appeals of Ohio, Nash argued that his conviction for felonious assault was against the manifest weight of the evidence, but he did not literally argue that there was insufficient evidence to support his conviction.  Nevertheless, the sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding

---

[4]  The state appellate court also found that Brown had failed to argue that any conviction other than his conviction for aggravated robbery was against the manifest weight of the evidence.

9

> that there was sufficient evidence.  The Ohio Court of Appeals, for instance, has explained that " '[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.'  Thus, a determination that a conviction is supported by the weight evidence will also be dispositive of the issue of sufficiency."  *State v. Lee,* 158 Ohio App.3d 129, 814 N.E.2d 112, 115 (2004) (citations omitted).  Therefore, the district court properly entertained Nash's sufficiency of the evidence claim because it has been effectively presented to the Ohio courts and was decided by the Ohio Court of Appeals.

*Nash v. Eberlin*, 258 Fed.Appx. 761, 764-65 (6th Cir. 2007); *see also Nash v. Eberlin*, 437 F.3d 519, 522 (6th Cir. 2006).

Because the state appellate court concluded that Brown's conviction was not against the manifest weight of the evidence and such a finding necessarily includes a finding of sufficiency, the merits of Brown's claim regarding the sufficiency of the evidence against him were considered by the state court.  Brown's claim that the evidence against him was insufficient to support a conviction for aggravated robbery, therefore, has not been procedurally defaulted.  All other claims in Brown's first ground for relief, however, have been procedurally defaulted.  For these reasons, the court should consider only Brown's claim in his first ground for relief that his conviction for aggravated robbery was not supported by sufficient evidence to sustain the conviction.

> 2.     *Procedural default and Brown's second and third grounds for relief*

Brown argues in his second and third grounds for relief that evidence regarding his statement to police while he was in the hospital should have been suppressed because he did not knowingly and intelligently waive his *Miranda* rights and because the statement itself was not voluntarily given.  Respondent argues that Brown has procedurally defaulted his claim that the statement was not voluntarily given.

When Brown appealed his conviction in state court, Brown conflated claims that he

10

did not  knowingly and intelligently waive his *Miranda* rights and that the statement given to the police was not voluntarily given.  Brown argued as follows:

> The Appellant filed a motion to suppress and argued that the taped statement that was given was not voluntary because at the time the Defendant had just been released from the Intensive Care Unit, was heavily medicated and suffering from hallucinations, and had been delusional and at times incoherent.  Specifically, trial counsel for the Appellant argued that; "he didn't have the mental ability to knowingly, voluntarily, and intelligently waive his *Miranda* rights and give a statement to police."

Brief of Appellant, Answer, Exh. 7, pp. 4-5 (citations omitted) (punctuation in the original). The state appellate court interpreted Brown's argument to assert only a *Miranda* violation and addressed that claim alone.

The court need not decide, however, whether Brown's claim that his statement was not voluntarily given has been procedurally defaulted because, as will be seen, the claim is without merit.  For this reason, the court will examine the merits of this claim in lieu of deciding whether the claim has been procedurally defaulted.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on

11

an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be

correct." 28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  The magistrate judge will consider Brown's remaining grounds for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.    *Ground one:  Whether there was sufficient evidence to support Brown's conviction for aggravated robbery*

Brown argues that there was constitutionally insufficient evidence to support his conviction for aggravated robbery.  Respondent challenges this assertion.

A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000).  This is the standard whether the evidence against the petitioner is direct or circumstantial.  *Spalla v. Foltz,* 788 F.2d 400, 402 (6th Cir. 1986).  It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Holland v. United States,* 348 U.S. 121, 140 (1954).

The role of the reviewing court in considering such a claim is limited:

> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).  "[A]ttacks on witness

13

credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo,* 742 F.2d 927, 935 (6th Cir.1984)).

The state appellate court reviewing this claim on direct appeal made the following relevant findings of fact and conclusions of law in addressing Brown's claim that his conviction was against the manifest weight of the evidence:

> Appellant argues that Appellee's evidence as to whether Appellant had intent or did in fact rob Mr. Williams is against the manifest weight of the evidence. We disagree.
>
> {¶ 17} While the caption of the second assignment of error refers to "each of the convictions," Appellant's argument only addresses the aggravated robbery conviction. Accordingly, we will limit our review of the manifest weight question to the aggravated robbery conviction.
>
> *       *       *       *       *
>
> {¶ 21} Appellant was found guilty of aggravated robbery, in violation of R.C. 2911.01(A)(1)/(A)(3), which provides in relevant part that,
>
> "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
>
> " * * *
>
> "(3) Inflict, or attempt to inflict, serious physical harm on another."
>
> The disputed element here is whether Appellant attempted or committed a theft offense: the remaining elements are not at issue.
>
> {¶ 22} Based on a review of the record, this Court finds it reasonable that the jury could have believed the testimony and evidence proffered by the State that Appellant either attempted or did commit a theft offense. The jury heard testimony from the State's 15 witnesses. The defense produced one witness: the Appellant testifying in his own defense.

14

{¶ 23} Appellant's main argument is that there is "no evidence that [he] had any of the victim's money or any other property that belonged to the victim." Appellant does not deny that he was holding money in his hand at the time of his arrest. However, he claims that the money belonged to him and he had pulled it out of his pocket to check to see if the victim had robbed him during their scuffle with the gun.

{¶ 24} Specifically, Appellant challenges the State's testimony regarding the DNA profiles found on the money. Brenda Gerardi, a forensic scientist at the Ohio Bureau of Criminal Identification and Investigation, performed DNA analysis on 11 bills recovered from the crime scene. Ms. Gerardi's testing found that the DNA profile on six of the 11 bills was consistent with Appellant's DNA. Both Ms. Gerardi's report and her testimony on direct examination state that "the expected frequency of occurrence of the DNA profile identified on * * * the money is 1 in 6 quintillion 557 quadrillion individuals." This means that in "6 quintillion 557 quadrillion people, you would expect to find that profile once." Accordingly, Appellant could not be excluded as the source of the DNA on those six bills. We understand that her finding of "unable to exclude" is her professional way of stating that appellant is "included" as a possible donor of the DNA found on the money, and that it could be expected that another individual having such a match would not be found until 6 quintillion 557 quadrillion individuals had been tested.

{¶ 25} There was only one bill on which Ms. Gerardi found a mixture of both the Appellant's and the victim's DNA. Based on this mixture of DNA, Ms. Gerardi was unable to exclude either Appellant or the victim as possible DNA contributors. With regards to the bill with the mixture of DNA, Ms. Gerardi explained that the proportion of the population that could not be excluded as possible contributors to the mixture DNA profiles found on this one bill is one in nine persons. While the DNA statistics for the one bill is not as conclusive as the DNA statistics for the other six bills, it is still relevant. These statistics considered in conjunction with the following DNA testimony by Ms. Gerardi, the fact that Appellant had money in his hand as he fled the crime scene, and Mr. Starcher's testimony below, all support Appellant's aggravated robbery conviction as not being against the manifest weight of the evidence.

{¶ 26} Lastly, Ms. Gerardi explained that just because someone touched the bills, does not mean that they left any detectable DNA on the bills. There were a total of 11 bills found in Appellant's hand at the time of his arrest. Of those 11 bills, ten of them did not contain the victim's DNA, while the remaining bill could not exclude the victim's DNA. Based on Ms. Gerardi's testimony, the lack of the victim's DNA on ten of the bills does not negate the possibility that those ten bills were in the victim's possession prior to the bills being found in Appellant's bloody hand.

{¶ 27} In addition to the DNA testimony, the State provided the testimony of Terry Starcher, a fellow inmate and acquaintance to Appellant. Mr. Starcher testified that while he and Appellant were in the local jail, Appellant told him about the events on

15

October 1, 2005.  Mr. Starcher relayed that Appellant was partying with Mr. Williams and some other people and became angry when Mr. Williams refused to share his wine with him.  Since Mr. Williams had not shared the wine, Appellant decided to rob him.  Appellant "called his roommate to make [Mr. Williams] feel more comfortable about leaving with him" and informed his roommate that he was getting a ride home from Mr. Williams.  As Appellant and Mr. Williams left the party, Appellant jumped him from behind in order to rob him.  However, Mr. Williams pulled out a gun and shot Appellant in the mouth.  Mr. Starcher described in detail the struggle for the gun between Appellant and Mr. Williams and where each of them were shot.  Lastly, Mr. Starcher told the jury how Appellant fled the scene and discarded the gun.

{¶ 28} Appellant did not deny that he spoke with Mr. Starcher in jail, but claimed that he did not give him any of the details to which Mr. Starcher testified.  However, Appellant's version of the events was similar in many respects, with the exception of his intent to rob Mr. Williams and jumping him.  Instead, Appellant asserted that he was acting in self-defense to Mr. Williams' sexual advances.  Nonetheless, Appellant was unable to explain how Mr. Starcher knew of the details of the incident.

{¶ 29} Appellant attempts to discredit Mr. Starcher's testimony by focusing on Mr. Starcher's motive for testifying against him.  However, Mr. Starcher testified on both direct and cross-examination that he had not entered into any agreement with the State nor was he receiving a sentence reduction on his pending case in exchange for his testimony.  Lieutenant Phillips, further, confirmed that Mr. Starcher was not receiving any deals by testifying in this matter.

{¶ 30} While Mr. Starcher's credibility may be tainted by the fact that he is also a prison inmate, his motivation in testifying against Appellant was clearly not fueled by consideration of a lesser sentence for his own crime.  Mr. Starcher testified to facts that were privy only to Appellant and Mr. Williams.  Appellant's attempts to discredit Mr. Starcher's account of the events and his credibility appear ineffective.

{¶ 31} Based on our review of the entire record, specifically Mr. Starcher's testimony in conjunction with the DNA evidence, we conclude that Appellant's criticisms of the State's evidence in this case are inadequate to prove that the jury lost its way and created a manifest miscarriage of justice.  *Thompkins,* 78 Ohio St.3d at 387.  Rather, we find it reasonable that the jury believed the State's version of the events, disbelieved Appellant and convicted him accordingly.  We conclude that the aggravated robbery conviction is not against the manifest weight of the evidence.

*State v. Brown*, 2007 WL 752163, *3-*6 (Ohio App. March 14, 2007).

When a habeas court is confronted by a petitioner who has argued a conviction

against the manifest weight of the evidence in state court and insufficiency of evidence in

federal court, the federal court presumes that a finding that a conviction was not against the manifest weight of the evidence was also a finding that "a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that [the petitioner] committed the essential elements of [the crime] beyond a reasonable doubt." *Nash v. Eberlin*, 258 Fed. Appx. at 764-65.

In the instant case, Brown has failed to demonstrate by clear and convincing evidence that the state appellate court erred in finding that the evidence presented at trial was sufficient to allow a rational trier of fact, after viewing the evidence in the light most favorable to the state, to find beyond a reasonable doubt that Brown committed the essential elements of aggravated robbery.  As noted *supra* at 3, n.1, Brown's objections to the state appellate court's factual recitation are entirely without merit.  Brown's theories as to what other conclusions the evidence adduced at trial might have supported do not preclude the fact that a rational jury could have found beyond a reasonable doubt on the basis of the evidence before it that Brown committed the essential elements of aggravated robbery.  Because Brown has not carried his burden of proof as to this claim, the court should dismiss Brown's first ground for relief, that there was insufficient evidence to support his conviction for aggravated robbery.

B.    *Grounds two and three:  Whether the trial court violated Brown's rights against self-incrimination and to due process and a fair trial by admitting his prior confession as evidence against him*

Brown argues in grounds two and three that the trial court violated his rights against self-incrimination and to due process and a fair trial when it denied his motion to suppress

his statement to police at the hospital and allowed the introduction of the statement at his trial.  Brown argues both that the statement should have been suppressed because Brown was incapable of knowingly and intelligently waiving his *Miranda* rights and that the statement should have been suppressed because Brown was incapable of giving a voluntary statement to police.  Respondent denies that the use of Brown's confession at trial violated Brown's constitutional rights.

     *1.    Whether Brown knowingly and intelligently waived his Miranda rights*

Before the police may interrogate a suspect in custody, they must first read the suspect a *Miranda* warning.  *Miranda v. Arizona,* 384 U.S. 436 (1966).  An "interrogation" includes both express questioning and any words or actions on the part of the police they know are reasonably likely to elicit an incriminating response from the suspect.  *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980).  Unless an exception to this rule applies, statements made before the administration and voluntary waiver of a suspect's *Miranda* rights are "irrebuttably presumed involuntary" and must be suppressed.  *United States v. Pacheco-Lopez*, 531 F.3d 420, 424 (6th Cir. 2008) (quoting *United States v. Mashburn,* 406 F.3d 303, 306 (4th Cir.2005)).  A statement taken in violation of *Miranda*, however, is only barred from the prosecution's case-in-chief.  Should the defendant open the door by his testimony, a statement taken in violation of *Miranda* may be used for purposes of impeachment.  *United States v. Havens*, 446 U.S. 620, 626-28 (1980); *Harris v. New York*, 401 U.S. 222, 224-25 (1971).

The state appellate court reviewing the corresponding claim on Brown's direct appeal issued the following findings of fact and conclusions of law relevant to this claim:

     {¶ 11} Appellant's first assignment of error alleges that the taped statement given to

18

the police while he was in the hospital was not voluntary.  Appellant contends that he lacked the capacity to knowingly, voluntarily, and intelligently waive his *Miranda* rights as he was in the hospital receiving treatment for gun shot wounds and was under the influence of morphine and Haldol.  Accordingly, it is Appellant's position that the taped statement should have been excluded at trial.  The State contends that this is a "non-issue."  We conclude that, because of the limited manner in which the statement was utilized in this trial, any error of the trial court concerning the voluntary nature of the waiver is of no moment, and would not warrant reversal.

{¶ 12} Appellant testified on his own behalf. During his direct examination he attempted to counter the version of the events on the taped statement.  On cross-examination of Appellant, the State utilized the taped statement to impeach Appellant's credibility by pointing out the inconsistencies between his trial testimony and the taped statement.  At no time during the trial did the State introduce the taped statement in its case-in-chief.

{¶ 13} In *Harris v. New York* (1971), 401 U.S. 222, the United States Supreme Court held that the prosecution may use a defendant's prior inconsistent statement as rebuttal testimony to impeach the defendant's credibility, regardless of whether there was compliance with *Miranda. Id.* at 225-26. See, also, *Wright v. State* (1998), 349 Md. 334, 375, 385 (Chasanow, J., concurring and dissenting) *("Harris* should be applicable when the prosecutor knows there are *Miranda* violations, when the prosecutor is uncertain whether there are *Miranda* violations, when the prosecutor is doubtful whether there are *Miranda* violations, and when there are no *Miranda* violations.").  As long as the defendant's statement was voluntary, the prosecution may use the statement to impeach the defendant.  *Michigan v. Harvey* (1990), 494 U.S. 344, 350.  Based upon our review of the suppression transcript and the taped statement, we find Appellant's taped statement to be trustworthy for impeachment purposes as there is no indication or suggestion in the record that the taped statement was involuntary or coerced.

{¶ 14} The invited error doctrine prohibits a party from "appeal[ing] an error which occurred as a direct result of that party's own actions at trial."  *State v. Rollins* (July 19, 1991), 6th Dist. No. F-88-11, at *4, citing *State v. Woodruff* (1983), 10 Ohio App.3d 326, 327.  By taking the stand and testifying specifically as to the substance of his taped statement, Appellant opened the door for the State to use his inconsistent statements for impeachment in rebuttal.  See, e.g., *State v. Winfield* (Sept. 18, 2000), 4th Dist. No. 98CA2453, at *6.  Additionally, Appellant has waived any error regarding the suppression of the taped statement as he, for tactical reasons, chose to testify and introduce the substance of the taped statement in his case-in-chief.  See *State v. Santiago,* 9th Dist. No. 01CA007798, 2002-Ohio-1114, at *4.

*Brown*, 2007 WL 752163 at *2-*3.

19

Even if Brown is correct that his statements in the hospital were taken in violation of his *Miranda* rights, this would not help him. The statements at issue were used only for purposes of impeachment, not in the prosecution's case-in-chief. As noted above, statements taken in violation of *Miranda* may be used at trial for purposes of impeachment. As the admission of Brown's taped statements at trial did not violate clearly established federal law, he may not obtain habeas relief based on the admission of those statements. Thus, the court should dismiss those portions of Brown's second and third grounds for relief that claim that his statement should have been suppressed because he was incapable of knowingly and voluntarily waiving his *Miranda* rights.

  *2. Whether Brown made a knowing and voluntary statement*

  Brown also argues that the taking of his statements in the hospital was itself not a voluntary act because he was drugged. Therefore, Brown argues, those statements may not be used against him even for purposes of impeachment.

  Statements made involuntarily may not be admitted at trial against a defendant for any purpose. *New Jersey v. Portash*, 440 U.S. 450, 459 (1979). "[A]ny criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law." *Id.* (quoting *Mincey v. Arizona,* 437 U.S. 385, 398 (1978)) (emphasis by the quoted court). Due process requires that any statement by a defendant be the product of "a rational intellect and a free will" before it may be used for any purpose against that defendant at trial. *Mincey*, 437 U.S. at 398.

  Before there can be a violation of due process, however, there must be state action to coerce a statement or overreaching in attempting to secure a statement under circumstances in which the state should know that a defendant's statement could not be

knowing and voluntary:

> Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law.  Respondent correctly notes that as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the "voluntariness" calculus.  But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional "voluntariness."

*Colorado v. Connelly*, 479 U.S. 157, 164 (1986) (footnote and citations omitted).

Brown contends that when he gave the statement to the police at the hospital, he "was so chemically induced . . . that any average Police Officer, or Trial Court should have known that the Petittioner's statements were so far from realistic that they should never have been admitted . . . ."  Traverse at 11.  Brown made this argument to the trial court when he moved to suppress his statement.  Motion to Suppress, Answer, Exh. 2.  The trial court held a hearing to investigate Brown's claims, during which it listened to testimony regarding the interrogation and listened to a recording of the interrogation.   The court subsequently found that Brown's statement was knowingly, voluntarily, and intelligently given.  In relevant part, the court found as follows:

> On October 7, 2005, Lieutenant Phillips checked with the hospital and discovered that Mr. Brown had been moved out of intensive care and into a step-down unit.  Phillips, who works the night shift, arrive at the hospital around 12:30 a.m. on October 8, 2005.  The officer checked with Brown's nurse to determine if he was taking any medications that might affect his ability to give a statement.  The nurse told him that the Defendant's last dose of 4 milligrams of morphine  was given at 8:00 - 8:30 p.m. the night before and this dosage should not interfere with the Defendant's ability to give a statement to police.
> Lieutenant Phillips testified that he did not rely on the nurse's assessment of the Defendant's mental faculties and made an independent  determination based on his observation of the Defendant. . . .
> Having reviewed the Defendant's statement to police in its entirety, and considering the totality of the circumstances, including: the length of the statement, the fact that the Defendant was only interrogated once, the fact that there is no

> evidence of coercive tactics by police, the fact that there is no evidence that the Defendant's mental faculties were impaired or compromised and the fact that the Defendant clearly and concisely told Lieutenant Phillips that he understood his <u>Miranda</u> rights and could speak "rationally" to him, the Court finds the State has met its burden to demonstrate by a preponderance of the evidence that the Defendant's statement was voluntarily, knowingly, and intelligently given to law enforcement.

Findings of Fact and Conclusions of Law, Answer, Exh. 3, pp. 2-4.

After examination of the audio tapes of Brown's interrogation at the hospital, the court finds that the tapes fail to demonstrate by clear and convincing evidence that the trial court erred in determining that Brown made a knowing, voluntary, and intelligent statement to police.   Although there are places at which Brown contradicted himself, these contradictions are just as likely due unsuccessful attempts to keep lies consistent as to mental confusion.   Moreover, Brown answered a number of biographical questions correctly, quickly corrected himself several times when he spoke in error, and showed no evidence of the lethargy characteristic of narcotic influence.  It cannot be said, therefore, that the trial court clearly erred in finding Brown's statement to be voluntary.  In addition, given that the interrogating officer waited until Brown had left intensive care before interrogating him[5] and had been assured by Brown's nurse that he was not under the influence of any drug that would disable him in making a statement to the police, it cannot be said that the police overreached in questioning Brown.  As Brown fails to show that his statement was not voluntarily given or that the police overreached in questioning him when they did, Brown cannot obtain relief on his claim that admission of his statement in the hospital violated his right to due process.  Consequently, the court should dismiss these

---

[5]  The trial court found that Phillips had come to the hospital to check on Brown on two earlier occasions and had left without speaking to him.

portions of Brown's second and third grounds for relief as without merit.

III

For the reasons given above the magistrate judge recommends that the court deny

Brown's petition for a writ of habeas corpus.


Date:  January 21, 2008                                   /s/ Nancy A. Vecchiarelli
                                                          United States Magistrate Judge


**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**